NOTICE
Decision filed 03/11/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241330-U

NO. 5-24-1330

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 11-CF-238 |
| | ) | |
| DONALD L. PHELPS, | ) | Honorable |
| | ) | Timothy D. Berkley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CLARKE delivered the judgment of the court.
Presiding Justice Cates and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err in dismissing the defendant's "motion for modification of sentence/vacate sentence" where the circuit court lacked jurisdiction over the motion, and where the circuit court was not required to recharacterize the motion as a postconviction petition. Because no argument to the contrary would have arguable merit, the defendant's appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Donald L. Phelps, is serving a sentence of 42 years in prison following his negotiated plea of guilty to one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2010)). On October 8, 2024, the defendant filed the "motion for modification of sentence/vacate sentence" that is the subject of this appeal. The circuit court denied the motion, and the defendant appealed from the denial. The Office of the State Appellate Defender (OSAD) was appointed as his appellate counsel. OSAD has concluded that this appeal lacks arguable merit and, on that basis, has filed a

1

motion for leave to withdraw as counsel, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a supporting memorandum of law. OSAD properly served the defendant with notice. This court gave the defendant the opportunity to file a response to OSAD's motion, but the defendant has not filed a response. Having reviewed OSAD's *Finley* motion and memorandum, and having examined the entire record on appeal, this court agrees with OSAD's assessment of this appeal.

¶ 3                                        I. BACKGROUND

¶ 4      On February 24, 2011, the defendant was charged, by indictment, with two counts of first degree murder, one count of residential arson, and one count of concealment of a homicidal death. The indictment alleged that on February 7, 2011, the defendant "repeatedly stabbed Angela Lish with a knife," causing her death. The indictment further alleged that on that same date, the defendant, "while committing an arson ***, knowingly partially damaged" Lish's residence, and the defendant "concealed the death of [Lish] by setting fire to her residence."

¶ 5      At a hearing held on August 1, 2011, counsel for the defendant announced that the defendant wished to enter a plea of guilty to one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2010)), "with a cap of 50 years." In exchange for the plea, the State would dismiss the remaining charges against the defendant. The circuit court admonished the defendant that under the proposed agreement, the defendant would receive a sentence between 20 and 50 years. The defendant agreed that those were the terms of the plea agreement and that he understood them. The State provided a factual basis for the plea agreement, which included that the defendant stabbed Lish "over 20" times, causing her death. After ensuring that the plea agreement was entered "freely and voluntarily," the circuit court stated that it would "bind itself" to the negotiations between the defendant and the State, then admonished the defendant regarding the procedures for his

2

sentencing hearing. The circuit court reiterated that pursuant to the plea agreement, the sentencing range would "be anywhere from 20 years *** to 50 years." The defendant acknowledged that he understood and stated that he still wished to plead guilty.

¶ 6    At the defendant's sentencing hearing, which was held on December 13, 2011, the State presented, as evidence in aggravation, the testimony of Detective Pete Vambaketes of the Alton Police Department. Detective Vambaketes testified that the cause of Lish's death was "[e]xsanguination due to multiple stab wounds." He testified that an autopsy performed by Dr. Nanduri determined that there were "[u]p to 28" stab wounds, including "[a]pproximately 11" stab wounds in Lish's back. Detective Vambaketes testified that he had reviewed the videotaped interviews in which the defendant was questioned by another police officer about the murder, and that in those interviews the defendant stated that Lish "became violent with" the defendant, attempting to stab the defendant. Detective Vambaketes testified that the defendant then stated that in the "fight" that followed, the defendant stabbed Lish "several times."

¶ 7    In argument, the State requested a sentence of 50 years. The State noted that Lish was stabbed 28 times, which the State claimed was not "something that occurs as an accident," or "something that occurs in self-defense." The State characterized the murder as "a rampage," and pointed out that 11 of the stab wounds were in Lish's back. The State further pointed out that after the murder, the defendant attempted to burn Lish's body, and her residence, to cover up the crime, and that at first the defendant lied to police about his involvement in the crime. The State noted that the defendant had "a history of prior criminal activity" that included "three prior convictions for burglary," and that the defendant "was both on probation and parole" when he committed the murder.

3

¶ 8    The defendant's counsel noted that the defendant was only 22 years old and came from a dysfunctional family that included a mother who "was mentally, emotionally and physically abusive to [the defendant] and all of her children." Counsel stated that the defendant's mother "suffered from severe alcoholism and depression," and provided no support, love, or nourishment to the defendant. She noted that a letter from the defendant's sister indicated that when they were growing up, their mother's failure to provide for them led to the heat in their home being "turned off more times than they could count," and that "[t]here was rarely food in the refrigerator." Counsel noted that a letter from a family friend of the defendant stated that the defendant's mother was extremely controlling and berated and insulted her children daily. Counsel further noted that when the defendant was about 10 years old, the defendant's mother "enlisted her son to help her attempt suicide," by asking him to bring her medication she could overdose with. Counsel also recounted the defendant's struggles with his own substance abuse and mental health issues, which began when the defendant was "approximately seven years old." She noted that the defendant's first stint in a substance abuse rehabilitation facility occurred when the defendant was only 14 years old. Counsel further noted that the defendant reported that he was "hospitalized several times for alcohol poisoning," including once when he was placed "on a ventilator for over 24 hours."

¶ 9    Counsel stated that she believed the defendant's "extreme alcoholism" contributed to the murder, which occurred when the defendant and Lish "had been drinking large amounts of alcohol." Counsel noted that the defendant had "been diagnosed with severe mental illness including Bipolar [disorder], depression, [attention deficit hyperactivity disorder] and suicidal tendencies," had been committed to multiple mental health treatment facilities, and had "attempted suicide at least three times since the age of 14." Counsel asked the circuit court to consider her arguments in mitigation and to "hand down a sentence of 25 years."

4

¶ 10    The circuit court noted that it had considered the evidence in aggravation and mitigation and stated that the court agreed with defense counsel that the defendant's upbringing was "horrible." However, the court described the murder as horrible as well. The court noted that by pleading guilty, the defendant had taken responsibility for his acts, which saved Lish's family from having to endure a "gruesome" trial. The circuit court thereafter sentenced the defendant to 42 years in prison, to be served at 100%, with credit for 311 days in custody.

¶ 11    The circuit court admonished the defendant that if he wished to appeal, he first would have to file a written motion to withdraw his guilty plea, which the defendant would have to do within 30 days of the sentencing hearing. The motion would have to state each reason the defendant believed he should be allowed to withdraw his plea, and any issues not raised in the motion "would be deemed waived for appeal purposes." The defendant was told that he was entitled to counsel to assist with the motion and was otherwise admonished about his appeal rights and the effects of withdrawing his plea, as required by Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001). The defendant stated that he understood his rights and the admonishments.

¶ 12    On January 11, 2012, the defendant filed a motion to reconsider sentence, in which his sole argument was that his sentence was excessive. A hearing was held on the motion on April 23, 2013. Because the original judge in the case had retired, the case was assigned to a new judge. The parties presented argument, with the defendant's counsel contending that not enough consideration had been given to the mitigating evidence presented at the sentencing hearing. The State argued that the circuit court considered all of the appropriate evidence in aggravation and in mitigation and did not err in sentencing the defendant to 42 years in prison, which was below the agreed cap of 50 years. The circuit court announced that it would take the matter under advisement, to fully acquaint itself with the previous proceedings in the case. On April 25, 2013, the circuit court

5

entered a written order in which it denied the defendant's motion to reconsider sentence. The defendant did not appeal the circuit court's ruling.

¶ 13    Over 11 years later, on October 8, 2024, the defendant filed the "motion for modification of sentence/vacate sentence" that is the subject of this appeal. Therein, the defendant raised numerous claims, including that he (1) was incarcerated for "a crime that he did not commit," (2) was only 21 years old at the time of the murder, (3) had a traumatic childhood, (4) suffered from mental illnesses, (5) had substance abuse issues, and (6) had a diminished mental capacity as the result of trauma, mental illness, and substance abuse. The motion also claimed the defendant received ineffective assistance of plea counsel and listed several alleged instances thereof. The motion then provided details about the defendant's purported rehabilitation in prison, and his "home plan" if he were to be released. The relief requested by the defendant was that his sentence be vacated or reduced.

¶ 14    On November 14, 2024, the circuit court entered a written order in which it denied the defendant's motion. The circuit court concluded that it lacked jurisdiction to consider the motion because the defendant did not file a timely motion to withdraw his guilty plea, as required by Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). This appeal, which was timely filed in accordance with the mailbox rule, followed.

¶ 15                                    II. ANALYSIS

¶ 16    The defendant appeals from the circuit court's November 14, 2024, order that dismissed his October 8, 2024, motion for modification of sentence/vacate sentence. As noted previously, OSAD has filed a *Finley* motion to withdraw as counsel. In the legal memorandum that accompanies the motion, OSAD raises two potential issues: whether the circuit court erred by (1) dismissing the motion for a lack of jurisdiction and/or (2) failing to recharacterize the motion

6

as a postconviction petition. However, OSAD concludes that neither issue has arguable merit. For the reasons that follow, we agree with OSAD.

¶ 17    This court reviews *de novo* the question of the circuit court's jurisdiction. *Johnson v. Ingalls Memorial Hospital*, 402 Ill. App. 3d 830, 840 (2010). As OSAD correctly notes, Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) states in pertinent part that "[n]o appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant" files an appropriate written postplea motion challenging the plea or the sentence within 30 days of the date on which the sentence was imposed. With regard to a negotiated plea of guilty, Rule 604(d) states that the postplea motion must be a motion to withdraw the plea of guilty and vacate the judgment. *Id.* For purposes of Rule 604(d), a negotiated plea of guilty is a plea in which the State "has bound itself to recommend a specific sentence, or a specific range of sentence," or one in which the State "has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending." *Id.*

¶ 18    The Illinois Supreme Court has held that the purpose of Rule 604(d) "is to ensure that before a criminal appeal can be taken from a guilty plea, the trial judge who accepted the plea and imposed sentence be given the opportunity to hear the allegations of improprieties" and "for fact finding to take place at a time when witnesses are still available and memories are fresh." *People v. Wilk*, 124 Ill. 2d 93, 104 (1988). A hearing pursuant to "Rule 604(d) allows a trial court to immediately correct any improper conduct or any errors of the trial court that may have produced a guilty plea." *Id.* The *Wilk* court emphasized that "[t]he trial court is the place for fact finding to occur and for a record to be made concerning the factual basis upon which a defendant relies for the grounds to withdraw a guilty plea." *Id.*

¶ 19    The Illinois Supreme Court has repeatedly observed that its "rules are not mere suggestions," but in fact "have the force of law." See, *e.g.*, *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 39 (2011). It has also emphasized that Rule 604(d) establishes a condition precedent that must be satisfied for a defendant to appeal from a plea of guilty. *Id.* at 40. As a general rule, pursuant to Rule 604(d), if a defendant fails to timely file the required postplea motion, the trial court is divested of jurisdiction over the case. *Id.* at 40-41, 43; *People v. Flowers*, 208 Ill. 2d 291, 303 (2003).

¶ 20    As OSAD notes, in this case, the defendant never filed, as required by Rule 604(d), a motion to withdraw his negotiated plea of guilty and vacate the judgment. He also failed to appeal the denial of his motion to reconsider sentence. We note that although an "admonition exception" to Rule 604(d) exists if the circuit court fails to admonish a defendant in accordance with Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001) (see, *e.g.*, *Skryd*, 241 Ill. 2d at 41), in this case it is clear from the record that for the following two reasons the admonition exception is not applicable.

¶ 21    First, as described above, at the defendant's December 13, 2011, sentencing hearing, the circuit court admonished the defendant that if he wished to appeal, he first would have to file a written motion to withdraw his guilty plea, which the defendant would have to do within 30 days of the sentencing hearing. The circuit court further told the defendant that the motion would have to state each reason the defendant believed he should be allowed to withdraw his plea, and that any issues not raised in the motion "would be deemed waived for appeal purposes." The defendant was told that he was entitled to counsel to assist with the motion, and was otherwise admonished about his appeal rights and the effects of withdrawing his plea, as required by Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001). The defendant stated that he understood his appeal rights and the admonishments. Second, the admonition exception relates only to the jurisdiction of the

appellate court after a defendant "timely files a notice of appeal from a guilty plea even though the defendant did not first comply with Rule 604(d)'s condition precedent of filing a postplea motion in the circuit court." *Skryd*, 241 Ill. 2d at 42. As the *Skryd* court noted, "[t]he admonition exception cannot restore jurisdiction to the circuit court after 30 days from entry of judgment," because although "the absence of admonishments is erroneous, the error does not render the judgment of a circuit court void [to the extent] that a defendant can raise the issue at any time." *Id.* For all of these reasons, we agree with OSAD that any argument that the circuit court erred by dismissing the defendant's motion for a lack of jurisdiction would be without merit.

¶ 22    The second potential issue raised by OSAD is whether the circuit court erred by failing to recharacterize the defendant's motion as a postconviction petition. The Post-Conviction Hearing Act (Act) provides a means by which a criminal defendant may assert that, in the proceedings that resulted in the defendant's conviction, there occurred a substantial denial of the defendant's rights under the United States Constitution, the Illinois Constitution, or both. See, *e.g.*, *People v. Evans*, 2013 IL 113471, ¶ 10 (citing 725 ILCS 5/122-1(a)(1) (West 2022)). If a defendant files a *pro se* pleading that alleges a deprivation of constitutional rights cognizable under the Act, the circuit court may choose to treat the pleading as a postconviction petition, as long as the circuit court (1) notifies the defendant that it intends to recharacterize the pleading, (2) warns the defendant that the recharacterization will subject any future petitions to the restrictions imposed on successive postconviction petitions, and (3) provides the defendant the opportunity to withdraw or amend the pleading as necessary. *People v. Shellstrom*, 216 Ill. 2d 45, 51, 57 (2005). As OSAD points out, the defendant's motion raised constitutional claims of ineffective assistance of counsel, all of which were based in part on evidence outside of the record, and therefore, the motion potentially could have been recharacterized by the circuit court as a postconviction petition. The motion also

raised a claim of actual innocence. However, as OSAD further points out, the circuit court is under no obligation to recharacterize a pleading as a postconviction petition, even if that pleading alleges a deprivation of constitutional rights cognizable under the Act, and the Illinois Supreme Court has held that the circuit court's decision not to recharacterize a pleading as a postconviction petition is not reviewable for error. *People v. Stoffel*, 239 Ill. 2d 314, 324 (2010). Accordingly, OSAD is correct that any argument that the circuit court erred by failing to recharacterize the defendant's motion as a postconviction petition would be without arguable merit.

¶ 23                                   III. CONCLUSION

¶ 24    This court's examination of the entire record establishes that this appeal does not present any issues of arguable merit. Therefore, the motion of appointed counsel to withdraw is granted, and the judgment of the circuit court of Madison County is affirmed.


¶ 25    Motion granted; judgment affirmed.